1840.

Braker
v.
Devereaux.

---

### BRAKER *vs*. DEVEREAUX and others.

Where all the parties in a partition suit are adults, and have been personally served with process, the court does not examine the proceedings, to ascertain whether all the proper parties are before the court, or whether the master has stated their several rights and interests in the premises correctly, in his report.

If the necessary parties are not before the court, in a partition suit, so as to make the decree for partition final and effectual as to all persons interested in the premises, the defendants who are served with process should appear and make that objection.

But where persons are proceeded against, in a partition suit, as absentees, or as unknown owners of undivided portions of the premises, or where the rights of infants are involved, it is the duty of the court to look into the proceedings and see that the rights and interest of such absentees, or infants, are correctly stated in the master's report; and that all proper persons are made parties, so that the decree will be effectual to bind their rights, as between such persons and the absent or unknown owners, or the infant defendants.

Where an undivided portion of the premises, of which partition is sought, has been conveyed to a trustee upon a trust not authorized by the revised statutes, the cestui que trust is a necessary party to the suit; to make the decree binding upon his interest in the premises.

If the absolute title to an undivided portion of the premises is vested in a trustee, upon a valid trust, it seems it is not necessary to make the cestui que trust a party to a partition suit in the court of chancery; but that it will be sufficient to bring the trustee, who has the whole legal estate in the premises, before the court.

Where one of the tenants in common, of an undivided tract of land, pays the taxes upon his share of the tract, and a certain number of acres, undivided, are sold out of the whole tract, to pay the taxes upon the shares of his co-tenants, his legal interest in the whole tract will not be diminished by such sale; but the sale will only diminish the interests of his co-tenants in the undivided tract.

THE bill in this cause was filed for the partition of the undivided lands in Adgate's eastern purchase, in the counties of Oneida and Herkimer, and was taken as confessed against the defendants who were made parties as known

October 6.

owners, upon a personal service of the subpoenas upon them respectively ; and the complainant advertised, under the statute, as against certain unknown persons or who were supposed to be owners, or tenants in common with Nicholas Gouvernier, of an undivided 3950 acres in the tract.   Upon the coming in of the master's report as to the title, the defendants who had appeared in the cause consented to the confirmation of the report ; and the case was submitted to the court for a decree appointing commissioners to make partition accordingly.

*R. Ten Broeck,* for the complainant.

The Chancellor.   In cases of this kind, where all the parties who are to be affected by the decree in partition are adults, and have been personally served with process, it is not the practice of the court to examine the proceedings particularly, for the purpose of ascertaining whether all the proper parties are before the court, or whether their respective rights and interests are correctly stated in the master's report ; as it is the duty of the defendants, or their solicitors, to except to the report of the master, if he has not stated their rights correctly upon the evidence before him.   And if the necessary parties are not before the court, to make the decree in partition final and effectual between the parties, those who are served with process, should appear and make that objection.   But where any persons are proceeded against as absentees, or unknown owners, or where the rights of infants are involved in such proceedings, it is the duty of the court to look into the proceedings, in order to see that their interests are correctly stated ; so far as can be ascertained from the proofs and the abstract of title reported by the master.   And also to see that the proper parties are before the court, as far as their names, and rights, and interests are known ; so that the decree will be effectual to bind their rights, as between them and the absent or unknown owners, or the infant defendants.

In this case the only persons proceeded against as unknown owners, are certain persons who are supposed to

own, either in common with Nicholas Gouvernier or otherwise, 3950 acres, subject to certain deductions ; it being the one moiety of an undivided 7900 acres of the premises conveyed to John Watts, in December, 1800, and which moiety was conveyed by Watts to Nicholas Gouvernier, the elder, in December, 1801. It is necessary, therefore, for the court to be satisfied that the owners of all the residue of the undivided lands in the tract, are before the court ; so that the share set off to the unknown owners shall not be subjected to a further diminution, or charge, to their prejudice ; as well as to be satisfied that the master has arrived at a correct conclusion as to the extent of the rights of these unknown owners.

So far as respects their rights I see no objection to the conclusion, at which the master has arrived, which can be to their prejudice, if the whole patent contains as many acres as are stated therein. But as certain quantities of land were sold, from time to time, as undivided portions of the whole tract, the master's report should have stated that the several parties were entitled to have their several quantities set off to them in the order of alienation, subject to the proper deductions on account of the sales for taxes or otherwise ; and that the complainant, who as the grantee of Anthony Lamb is entitled to all the undivided land in the tract which had not been conveyed to others, either upon the tax sales or otherwise, was entitled to such residue, whether more or less than the supposed quantity of 18837 acres stated in the master's report, subject to a proportionate deduction on account of the 2000 acres sold to H. Seymour in Oneida county.

In another respect, however, I perceive the master has erred in favor of these unknown owners, to the prejudice of the complainant ; and also as respects the complainant and some of the other parties who have appeared in the cause. Several parcels of the lands have been sold for taxes from time to time, for the unpaid taxes upon the shares of these unknown owners as well as upon the share which the complainant subsequently purchased from A. Lamb. Each of

those sales, therefore, necessarily reduced the number of acres belonging to each of the tenants in common whose taxes were unpaid at the time of such sale, rateably, in proportion to the whole number of acres held by each, at that time, in the part of the tract out of which such sale was made. For instance, it appears that at the time of the sale for taxes, in 1813, A. Lamb was the owner of all the tract in the county of Oneida, except that undivided portion thereof which had been conveyed by the marshal to Watts, and one moiety of which had been conveyed to Gouvernier. Watts had paid his taxes, but Lamb and Gouvernier, or the unknown owners under him, had not. The sale, therefore, of the 2000 acres for taxes, to Henry Seymour, left Watts entitled to his full share of that part of the tract, as before the sale ; that is, to the same number of acres as he had before. But the relative number of acres held by Gouvernier, or the unknown owners under him, and of those previously held by Lamb, were diminished rateately by that sale. And if the master's abtract of the conveyances is correct, the 1650 acres, which upon the partition were afterwards set off to Seymour as an equivalent for the 2000 acres undivided, should be deducted, at that time, from the shares of the claimant under A. Lamb, and the claimants under Gouvernier rateably.

Although Watts paid the taxes on 3950 acres, which was more than his proportion of the tract which lay in the county of Oneida, it did not purport to have been paid for one of his co-tenants more than another. He, therefore, had a claim against all of them, rateably, for the money paid for their use ; and their legal titles in the lands held by them were diminished in quantity rateably, by the sale for the residue of the tax, notwithstanding such excess in payment.

The same thing occurred in the sale of the lands in Herkimer county for taxes in 1821 ; when all that part of the tract was sold except 3950 acres, undivided, on which the taxes were discharged by Watts. J. C. Devereaux, as the purchaser under Watts, appears, therefore, to be entitled to his full share of the lands set off, in the partition of that portion of the tract, for the unknown owners ; and the re-

sidue thereof, except the rateable proportion of Devereaux, under the subsequent purchase of 1900 acres of the 3950, for taxes, belongs to the complainant and to such unknown owners ; in proportion to the quantity of their former interests therein.

A similar result was produced by the sale to Austin, of 2900 acres in Oneida county, in 1821 ; after Henry Seymour had discharged the taxes on his undivided 2000 acres, and Watts on an undivided 3950 acres, in that part of the tract situated in that county. And also by the subsequent sale of 1000 acres in that part of the tract to J. King, after Henry Seymour had again paid his taxes on his 2000 acres, and J. H. Rogers had discharged the taxes on the 2900 acres. At this last sale the taxes do not appear to have been paid on the share of Watts. That share must therefore, be diminished rateably with those of the other owners whose taxes were unpaid. And as the expense of the partition was chargeable rateably upon the lands of all the owners of the lands divided, the 2000 acres sold in severalty to Horatio Seymour, to pay the portion of the costs upon the lands in Oneida county exclusive of the 1650 acres assigned to Henry Seymour, must be deducted rateably from the shares which the other owners held in that part of the tract, at the time of that sale.

From this statement of the rights of the several parties, it appears to be impossible to make a proper partition without a further reference, to ascertain the quantity of land contained in the whole tract and in each county separately ; and to ascertain how many acres in each county belong to the unknown owners, and how many to each of the known parties or owners.

There is another difficulty in this case, arising out of the provisions of the revised statutes relative to uses and trusts. It appears by the master's report that the 2900 acres sold for taxes in the county of Oneida was, in 1829, conveyed to Green and Oliver, in trust for Antoine F. Picquet, who is not a party to the suit ; and that in 1833 they conveyed the same to the defendant, Nicholas Devereaux, in trust for Picquet, to be conveyed to such persons, or to be dis-

1840.

Braker
v.
Devereaux.

posed of, as he might direct.    If the whole legal title had become vested in Devereaux, by virtue of that deed, perhaps in an actual partition of the legal estate, the making of the cestui que trust a party might be dispensed with ; as it would be in a partition by a court of law.    But as this conveyance to Devereaux was executed subsequent to the time when the revised statutes went into operation, it is not sufficient to vest the legal title to this 2900 acres in him. The trust specified in this deed is not such an one as is au-. thorized by the 55th section of the article of the revised statutes relative to uses and trusts.    (1 *R. S.* 728.)    And with the exception of such trusts as are there authorized and defined, the 49th section of that article declares, that every disposition of lands, whether by deed or devise, thereafter made, shall be directly to the person in whom the right to the possession and profits shall be intended to be invested, and not to any other, to the use of or in trust for such person ; and if made to one or more persons, to the use of or in trust for another, no estate or interest, legal or equitable, shall vest in the trustee.    Again ; the 47th section declared that every person who by virtue of any grant, assignment, or devise, then was or thereafter should be entitled to the actual possession of lands and the receipt of the rents and profits thereof, in law or in equity, should be deemed to have a legal estate therein, of the same quantity and duration and subject to the same conditions as his beneficial interest.    The operation of these several statutory provisions was to prevent any such conveyance, made after the 31st of December, 1829, from vesting any estate or title in the trustee named in such conveyance ; and to give the legal estate directly to the cestui que trust, to the extent of the beneficial interest which the conveyance purported to grant to the trustees for his benefit.    Whatever title passed under the deed of the 17th of July, 1833, vested them immediately in Picquet, as a legal estate, and not in Devereaux as the trustee.    To enable the court, therefore, to make a proper partition in this case, which will be binding upon Picquet, and protect the rights of the

other tenants in common, he must convey all his right and interest in the premises to Devereaux, absolutely ; or the complainant must amend his bill and make him a party. When that is done, and the cause is in readiness for the further reference, any of the parties may enter an order of course, referring the case back to the master to ascertain the quantity of land in the tract, and in each county, and the rights of the parties in the undivided lands in such counties respectively, upon the principles before stated.