WILLIAM JAY and Others, Respondents, *v.* WILLIAM G. WILSON, Appellant.

*Vendor and purchaser — marketability of the title, not affected by a deed prior in date and subsequent in record to the vendor's — attorney's fee for the search where he rejects the title — the refusal of the title must not be capricious.*

A purchaser is not bound to take a title which he can defend only by parol evidence, a species of proof which time, death or some other casualty may place beyond his reach.

Where a loan is to be made upon a title, provided the title is "satisfactory" to the attorneys of the lender, the attorneys have no right to refuse arbitrarily or capriciously to be satisfied with the title.

In order to justify the rejection of a title, there must be some reason, tenable at law, upon which such dissatisfaction is founded.

Where the record title is complete and no resort to parol evidence is necessary to sustain it, the mere existence of an outstanding deed of the premises, dated before but recorded after the deed under which the present owner claims, affords no legal ground for a refusal to accept the title.

In an action brought to recover a fee for searching the defendant's title, it appeared that the defendant, desiring to obtain a loan upon his house from Egerton C. Winthrop, made a written agreement with the plaintiffs, who were Winthrop's attorneys in the matter, that the loan should be made in case his title to the premises proved "satisfactory" to the plaintiffs and that he would pay them for their services one per cent of the loan and the usual disbursements; that the search which was made showed title in the defendant, but also showed that a former grantor in the chain of title had given to another person a deed of the premises in question which was dated before, but was recorded after, the one under which the defendant claimed title. There was no proof that the grantee in the deed secondly recorded had ever been in possession of the premises, or that the grantee in the deed recorded first had any reason to suspect the existence of the other deed. The plaintiffs notified the defendant that they had, after an examination of the search, advised Winthrop not to make the loan.

*Held,* that the title was marketable and should have been accepted;

That the plaintiffs, having unreasonably decided against the validity of the title, and having improperly advised Winthrop not to accept it, could not recover any fee for the services which they alleged that they had rendered to the defendant under the agreement.

O'BRIEN, J., dissenting on the ground that the defendant was bound to give some explanation of this matter.

APPEAL by the defendant, William G. Wilson, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 6th day of May,

1895, upon the decision of the court rendered after a trial at the New York Circuit before the court without a jury.

This action was brought to recover a fee for searching the title to premises alleged to be owned by defendant under an agreement evidenced by a memorandum, signed by the defendant, as follows :

"48 Wall Street, New York, *Nov.* 26*th*, 1894.

"Messrs. Jay & Candler, Attorney and Counsel for Egerton L. Winthrop :

"Dear Sir.— Your client being willing to loan me $20,000 for 5 years at 5 per cent per annum on my bond, secured by a first mortgage on the premises known as No. 314 West Eighty-sixth street, New York city, and now owned by me, which mortgage is to be executed by me and my wife, and which said bond and mortgage are to be drawn by, and to be in form satisfactory to you, the said loan to be made in case my title to said premises is satisfactory to you, I hereby agree to pay you for your services for examining such title one per cent on the amount of the proposed loan, and in addition, all cash which you may disburse for searches and for recording such deeds and mortgages and other papers as shall be desirable, and for notary's fees and such other disbursements as shall be necessary.

"Yours respectfully,

"WILLIAM G. WILSON."

Frederick Van Tine was the owner of the premises under examination prior to June 29, 1889. On November 6, 1889, Van Tine executed a deed to Mary F. Hopkins for the consideration, as shown in the deed, of $40,000. The deed was recorded November 13, 1889. By a deed dated June 29, 1889, Frederick Van Tine purported to convey the same premises to Nelson M. Whipple. This deed was recorded May 14, 1890. By deed dated July 17, 1891, and recorded July 22, 1891, Mary F. Hopkins conveyed the title to William G. Wilson, the defendant in this case.

Upon discovery of the Van Tine-Whipple deed, the plaintiffs wrote to Rose & Putzel, who were the attorneys for the defendant at the time of the purchase by him of the premises, informing them of the condition of the record, and requesting them to call and explain the matter. Although such attorneys disclaimed being the

representatives of the defendant, they nevertheless wrote in reply, saying that if the plaintiffs or whoever had the matter in charge would call at their office "we shall be happy to give such further explanations as we possibly can." These letters do not seem to have brought the attorneys together, but resulted in further communications, one of which was a letter from the plaintiffs directly to the defendant stating, among other things, that "after carefully examining the returns made upon the search and considering the questions presented, we have reached the conclusion with great reluctance that we cannot approve the title or advise our client to make the loan." Thereafter Rose & Putzel wrote the plaintiffs that the defendant had handed plaintiffs' communication to them, and demanded back the abstract and searches. Then plaintiffs wrote to Rose & Putzel as follows: "When the difficulty in the title was manifest to us, we endeavored to obtain the presence of one of your firm here to explain matters, but without success. We then went to the Lawyers' Title Company and stated the condition of the title as disclosed by our official searches to one of the counsel in the law department, and were informed by him that under the state of facts as they were disclosed by those searches, the company would not be willing to insure the title." The letter closed by advising them that they should commence a suit for their fee.

*Gibson Putzel*, for the appellant.

*Flamen B. Candler* and *Egerton L. Winthrop, Jr.*, for the respondents.

VAN BRUNT, P. J.:

I concur in the conclusion arrived at by Mr. Justice O'BRIEN, that the contract under consideration in this action did not confer upon the plaintiffs the right arbitrarily and capriciously to refuse to be satisfied with the title which was tendered, but that there must be some reason upon which the dissatisfaction was founded. But I do not concur in the conclusion that there was any difficulty with the title which was offered under the contract referred to. I think that in arriving at this conclusion the learned justice has misconceived the

rule applicable to the question of marketable titles. It is undoubtedly the law as stated in *Irving* v. *Campbell* (121 N. Y. 353), and cited by him, that a purchaser is not bound to take a title which he can defend only by a resort to parol evidence, which time, death or some other casualty may place beyond his reach; and that a purchaser will not generally be compelled to take a title when there is a defect in the record title which can be cured only by a resort to parol evidence. But in the case at bar there is no defect in the record title. It is complete. The purchaser would not be compelled to resort to parol evidence for the purpose of defending his title. The sole ground upon which it is claimed that the title is not marketable is the fact that subsequent to the record of the deed of a purchaser in good faith, there appears from his grantor a deed of a previous date upon the record. This subsequent deed casts no cloud upon the title of the purchaser. His record title is superior, and there is not a tittle of evidence impeaching that record title.

But it is claimed upon the part of the respondents that if the grantee of the subsequent deed should show that the purchaser who paid his money for the property knew of the existence of this deed, or was in possession of the property, the title would be impeached. There is not the slightest attempt to prove that the grantee in that deed ever was in possession, or that the first purchaser had any reason to suspect the existence of any such deed. If such a procedure is to create a cloud upon title, then no purchaser is secure because his grantor, after he has conveyed and his grantee's deed is placed on record, may sign and acknowledge a new deed dated back of the deed by which he has conveyed the property, and record it and thereby create a cloud upon the title. The validity of titles cannot be subject to any such schemes or devices. The record title in the case at bar was good. It required no parol evidence to sustain it, and hence, according to the authority cited, the title was a marketable one.

PARKER, J., concurred.

O'BRIEN, J. (dissenting):

Upon the trial and on this appeal the appellant insisted that upon the showing made the title was valid and marketable, and that the

plaintiffs, therefore, were bound to be "satisfied." On the other hand, the respondents contend that, under the terms of the contract, the title to the premises which was to be examined by the respondents was to be "satisfactory" to them, and that, as the title after examination was not a satisfactory one in their judgment, they were entitled to recover the fee agreed upon for their services. I do not think it is necessary, for the disposition of these contentions, to determine whether the title was in fact valid and marketable, the question presented being whether it was a satisfactory one within the terms of the agreement made between the plaintiffs and the defendant.

There is a class of cases in which it has been held that " when a person contracts to perform work to the satisfaction of the other party to the contract, and the subject involved is a matter of taste, like the painting of a portrait, the rule is that the person for whom the work is to be done is the sole judge, and if he refuses to accept the work on the ground that it is not satisfactory, his decision cannot be questioned." (*Moore* v. *Goodwin*, 43 Hun, 536.) And there is another class in which it has been held that it is competent for the parties to make an agreement outside of matters relating to taste, by which one can give to the other the right of arbitrarily rejecting the performance or tender of performance by the other party. (*Gray* v. *Cen. R. R. of N. J.*, 11 Hun, 70.) I think, considering the subject-matter of the contract and the construction to be given thereto, that it did not confer upon the plaintiffs the right arbitrarily and capriciously to refuse to be satisfied, and that in this respect it falls within the principle established by another class of cases in which the rule has been stated as follows: " That which the law will say a contracting party ought in reason to be satisfied with, that the law will say he is satisfied with." (*Miesell* v. *Globe Mutual Life Ins. Co.*, 76 N. Y. 115; *Dennis* v. *Mass. Benefit Association*, 120 id. 496.)

Applying this rule, which is as favorable as the appellant contends for, I think that the conduct of the plaintiffs in refusing to pass the title or make the loan without further explanation, which I think the defendant was called upon to furnish, was neither capricious nor arbitrary. The good faith of the plaintiffs is not assailed. As soon as the existence of the Van Tine-Whipple deed was known,

they gave the defendant and those who were acting for him a state-ment of the defect, and requested suggestions or explanations which might satisfy them, and these were not furnished. The existence of this deed was sufficient to put the plaintiffs upon inquiry, it being conceded that if Whipple had gone into possession of the premises in question under his deed, this would have been notice to all, and that one who took title under such circumstances would do so at his peril, no matter whether his deed was recorded first or not. I think this proposition is sound, although that contended for by the appellant may be equally sound, i. e., that a person holding title under a recorded deed, purporting on its face to be for a valu-able consideration, is presumed to have been a purchaser in good faith and without notice of the existence of an unrecorded deed prior in date; and that the burden of proving that the grantee in the first recorded deed had notice is upon the assailant of the title. If, however, the title were assailed upon the ground that Whipple had gone into possession with notice, the attitude and knowledge as to the title of the person who took from Van Tine the deed first recorded would be necessary to support defendant's title. And in this situation, upon the question presented by the appellant as to this being a marketable title, we might with profit resort to the case of *Irving* v. *Campbell* (121 N. Y. 353), where Ruger, Ch. J., in discussing the question as to what constituted such a title, said :

" The rule as to the quality of such title is quite fully stated by Judge Earl in *Moore* v. *Williams* (115 N. Y. 586). He there says : * * * 'Is a purchaser bound to take a title which he can defend only by a resort to parol evidence which time, death or some other casualty may place beyond his reach ? * * * A good title means not merely a title valid in fact, but a marketable title which can again be sold to a reasonable purchaser or mortgaged to a per-son of reasonable prudence as security for a loan of money. A purchaser will not generally be compelled to take a title when there is a defect in the record title which can be cured only by a resort to parol evidence.' It was also said by Judge Andrews, in *Flem-ing* v. *Burnham* (100 N. Y. 10), 'A title open to a reasonable doubt is not a marketable title. The court cannot make it such by passing upon an objection depending upon a disputed question of fact or a doubtful question of law, in the absence of the party in

whom the outstanding right was vested. * * * It would espe-cially be unjust to compel a purchaser to take a title, the validity of which depended upon a question of fact, where the facts presented upon the application might be changed on a new inquiry or are open to opposing influences.'"

It is conceded by appellant that a recorded deed is open to attack upon the ground that there is a prior unrecorded deed, provided it can be shown that the grantee in the recorded deed took under the former deed — took with notice of the unrecorded deed. The exist-ence of the Whipple deed justified an inquiry by the plaintiffs into the question as to its effect, and the probability of an attack upon the title from that quarter; and, if it were made, it is con-ceded that the evidence to sustain the title would in part, at least, rest in parol. The inquiries, however, addressed to the defendant, and to those whom plaintiffs in the beginning had a right to regard as his attorneys, elicited no explanation of any kind, nor upon the trial of this action was it suggested one way or the other as to whether or not Whipple went into possession of the property at the time of the delivery of the deed to him, or what, if any, were his relations to this title. Where, as here, the contract was that the title was to be satisfactory to the plaintiffs, I do not think the defendant could legally take the position that he would give no explanation, but would compel the plaintiffs to accept or reject the title at their peril. In this, I think, as argued by the respondents, the counsel for the appellant loses sight of the relation existing between the parties to this controversy. While, as a matter of law, the burden is upon the one that claims a title is not marketable to prove that fact, the answer is given in the suggestion that the relation between the respondents and the appellant was not that of vendee and vendor, but was that of attorneys for the proposed mortgagee and the proposed mortgagor. The appellant, therefore, stood in the light of a vendor of the property, so to speak, and it was for him to satisfy the respondents, if he could do so, from the documents or other conclusive and satisfactory evidence that he might possess, which was not of record, that his title was marketable; and it was not incumbent upon the respondents to make good the title of the appellant, and, if they could, to show that the title was marketable, and one upon which they could conscientiously advise their client to

loan his money.   While, therefore, if this had been an action for specific performance, brought by a vendor against a vendee, wherein the former had produced *prima facie* evidence from the record as to the validity of his title, the vendee could not reject the title tendered without showing that such title was invalid or unmarketable, attorneys for a proposed lender, under a contract such as was here entered into, providing that the title was to be satisfactory to them, are not in the same position.   And where, as here, upon examination such attorneys discover the existence of a deed prior in date to that under which the proposed borrower claims, concerning which no explanation is given, although asked of the proposed borrower, and the duty of giving which devolved on the latter, the refusal to make the loan, or pass the title, cannot be characterized or regarded as arbitrary, captious or unreasonable.

I am of the opinion, therefore, that the judgment was right and should be affirmed, with costs.

Judgment reversed, new trial ordered, costs to appellant to abide event.